IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

vs.                                                  CIVIL NO. 97-314 LH/LFG
                                                     CRIM. NO. 95-98 LH

ERIC STUART HARFST,

    Defendant-Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

    1. This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed March 11, 1997. The government filed its response on April 9, 1997. Movant Eric Harfst ("Harfst") attacks his sentence entered by the United States District Court for the District of New Mexico in United States v. Harfst, CR 95-38 LH.

    2. The facts and procedural history of this action are as follows. Harfst was arrested January 9, 1995 by agents of the Drug Enforcement Administration ("DEA") at the Amtrak train station located in Albuquerque, New Mexico. The manifest for the Amtrak Train No. 4, on which Harfst was a passenger, indicated that Harfst purchased a one-way ticket from Los Angeles, California to

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Chicago, Illinois on January 8, 1995. Harfst purchased the ticket with cash and left no callback number. The ticket was exchanged for another one only twenty minutes before the train's departure. Harfst arranged for a private sleeper compartment and, instead of checking his bags in the luggage car, he kept them with him in the sleeper compartment. After a search of his luggage, which was found to be consensual, DEA agents found 1.123 net kilograms of methamphetamine in Harfst's toiletry bag. On January 18, 1995, a federal Grand Jury for this district returned a one-count indictment charging Harfst with possession with intent to distribute more than 100 grams of methamphetamine, its salts, isomers, or salts of its isomers, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A). Harfst moved to suppress the evidence seized and statements he made while on the train. The Court denied his suppression motion and Harfst, in turn, conditionally pled guilty to the possession count. He was sentenced to a term of incarceration of 96 months, to be followed by a five-year term of supervised release. Harfst appealed the denial of his suppression motion to the United States Court of Appeals for the Tenth Circuit. The Circuit affirmed in <u>United States v. Harfst</u>, No. 95-2164, 1996 WL 131501 (10th Cir. March 26, 1996). Harfst filed this Motion under § 2255 on March 11, 1997; on July 7, 1997, the District Court denied the Motion, adopting the Magistrate Judge's Findings and Recommended Disposition and dismissing the action with prejudice. Harfst appealed the final judgment to the United States Court of Appeals for the Tenth Circuit. On February 16, 1999, the Circuit remanded the case for an evidentiary hearing on the issue of ineffective assistance of trial counsel. <u>United States v. Harfst</u>, 168 F.3d 398 (10th Cir. 1999). The evidentiary hearing was held on June 10, 1999.

    3. Judicial notice has been taken of the court files and records.

    4. Harfst contends that he was a "minor" or "minimal" participant in the crime and thus

eligible for a downward adjustment under U.S.S.G. § 3B1.2. He argues that he was denied effective assistance of counsel in that his trial attorney failed to raise this issue at the sentencing hearing.

5. The government contends that trial counsel was not constitutionally ineffective, and, further, even if counsel had raised the issue of downward adjustment, the District Court would have found that Harfst was not a minor or minimal participant.

6. The Court finds that, although trial counsel could have argued more vigorously for a minor or minimal participation status, or could have been more zealous, the issue was in fact raised, and counsel's representation of Harfst was not constitutionally defective. Harfst was reluctant and uncooperative in disclosing information to his attorney, but it is apparent that whatever information Harfst gave to counsel, the attorney effectively used it in attempting to reduce the sentence. The Court further finds that the District Judge, had he specifically addressed the issue in findings, would have found that Harfst's version of the facts was not credible and that Harfst would not have been characterized as a minor or minimal participant under U.S.S.G. § 3B1.2. Thus, Harfst's motion should be denied.

7. To establish ineffective assistance of counsel, Harfst must make a two-pronged showing: (1) that counsel's performance was constitutionally defective; and, (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1974). The Tenth Circuit directed this Court, in accordance with Strickland, to conduct an evidentiary hearing to determine: (1) whether Harfst's counsel adequately raised the issue of downward adjustment; and, (2) whether the District Court would have granted a request for a § 3B1.2 adjustment, if it had addressed the issue. United States v. Harfst, supra, 168 F.3d at 404-05.

3

**Counsel's Performance Was Not Constitutionally Defective.**

8. To prove deficient performance, Harfst must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 118 S. Ct. 126 (1997).

9. The performance of Harfst's attorney, Gary Nelson, was not "completely unreasonable." Nelson testified that his defense strategy was twofold: first, he sought to challenge the evidence by way of a motion to suppress and, that being unsuccessful, he then worked to minimize the jail term his client faced. (Transcript of Evidentiary Hearing, June 10, 1999 [hereafter, "Tr. EH"], at 13-14). He was successful in reducing Harfst's criminal history category from two to one. He was also successful in taking advantage of the "safety valve" provision in the Sentencing Guidelines, allowing Harfst to avoid the ten-year mandatory minimum. Nelson testified that he was aware of the possibility of a downward adjustment based on minor or minimal participation in the crime and that he didn't think it was a frivolous argument, He requested it, but he didn't have enough factual information to determine the level of Harfst's participation. (Tr. EH, at 29, 47-50). He stated that he repeatedly attempted to draw information from Harfst with regard to the scope of the drug operation for which he was acting as courier, but that Harfst was extremely reluctant to discuss the role of others in the operation and, as a result, Nelson's approach on this issue was necessarily somewhat vague.

4

10. The sentencing hearing in this case was held in three separate sessions.  At the first hearing, on July 5, 1995, defense counsel had not had an adequate opportunity to review the Presentence Report with Harfst, and the District Judge continued the hearing to July 7.  At the second hearing, Harfst's attorney proffered a statement regarding Harfst's role in the crime, as required by 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2, in order to allow Harfst to qualify for sentencing below the mandatory minimum.  Harfst stated in this letter that a man named Jeff King approached him in a bar and told him he would pay Harfst $3,600.00 if he would take a package by train from Los Angeles to Chicago.  He also stated that at least two other unnamed individuals were involved in the activity, one who brought the package to his room, and another who was to meet him at the train station in Chicago and take delivery.  Harfst said that he did not know either of the unnamed individuals.  In order to give the government a chance to verify the accuracy of Harfst's statement, the District Court then continued the hearing to July 21, 1995.  At the July 21 hearing, the government did not offer any additional facts with regard to the drug operation.     11.  With regard to his efforts to draw out information from his client, Nelson testified as follows.  In initial discussions with his client regarding the beneficial effects of cooperation, he sensed that Harfst was too "fearful" to talk about anyone else who was involved in the drug operation.  Nelson explained how important it was to assist the government, but Harfst was "just very adamant about it," saying, "This is my stuff, I will take responsibility for it."  (Tr. EH, at 17, 37).  Prior to issuance of the Presentence Report, Nelson was unable to get his client to talk about others involved in the scheme and had to operate under the assumption that Harfst was the only person involved.  Since he did not have information about any other participants, Nelson had to rely on admissions made by Harfst at the suppression hearing and at the original guilty plea, rather than a direct statement by his client, in order to move

5

for an adjustment for acceptance of responsibility. (Tr. EH, at 27). Nelson eventually obtained a written statement from his client regarding other individuals involved in the operation, which he submitted to the Court at the second sentencing hearing. Even after he received this statement, however, Nelson stated that in spite of "pushing" his client for information, the only facts he really had were that a man named Jeff King in California, whom Harfst knew only casually, asked him to carry a package containing drugs to Chicago, and that someone was to pick it up. Harfst did not tell him whether King was involved in drugs as a business, and he did not identify by name the person who dropped the package off at his hotel room in California, nor the person who was to meet him at the train station in Chicago. (Tr. EH, at 28-29, 38, 56-57, 60). Nelson was aware that his client was relying on him to get the lowest possible sentence under the guidelines, but he was hampered in his efforts to do so by Harfst's reluctance to provide all the facts he would need to make specific, pointed arguments. "I don't create the facts," Nelson stated, "but it is my job, based on those facts, to get the lowest I can." (Tr. EH, at 36).

12. It is apparent that, in spite of his attempts to obtain information from his client, Nelson essentially received little from Harfst, to the extent that, even today, Nelson says he could not characterize Harfst's role in the operation and could not say whether it was minor of minimal. He just doesn't know enough to assess degrees of culpability, and he didn't know enough at the time of sentencing, because his client refused to share this information with him. (Tr. EH, at 29, 50). Nelson did, however, raise the minor/minimal issue at the time of sentencing. The Court asked Nelson at the final sentencing hearing whether Harfst had any objections to the Presentence Report, and counsel answered, "No, sir. The only thing I would ask the Court to consider is whether or not he's a minor or minimal participant based on the information the Court has available to it . . . ."

6

At the evidentiary hearing, Nelson stated in response to a question from the Court that the phrase, "based on the information the Court has available to it," referred to the information in the letter regarding Harfst's role in the offense. This was sufficient to adequately raise the issue of a downward departure. Since Harfst's attorney stated that the reasons supporting his request for downward adjustment were the same as those given in Harfst's letter, he presumably felt that the factual underpinnings of the request were already before the Court and there was no need to elaborate on the issue. In any case, Nelson simply didn't have any additional facts to place before the Court, other than the information contained in the "safety valve" letter. (Tr. EH, at 57-58, 59). Furthermore, Harfst himself testified at the evidentiary hearing that there is nothing he would have said to the judge at the sentencing hearing with regard to the minor or minimal participation issue, other than what was contained in the letter. (Tr. EH, at 93-94). Nelson also testified that his client never professed innocence to him. (Tr EH, at 30). In addition, Harfst admitted at the evidentiary hearing that he knew that the package he agreed to take to Chicago contained methamphetamine, (Tr. EH, at 68), and he acknowledged in his plea hearing that he did indeed possess methamphetamine, and he did have an intent to distribute it. (Transcript of Plea Hearing, April 17, 1995, at 7). Under the circumstances, the Court cannot say that Nelson's performance was "completely unreasonable" and bore "no relationship to a possible defense strategy."

13. Harfst's counsel testified at the evidentiary hearing and stated that, in hindsight, he now wishes that he had given more emphasis to the minor participant issue. However, the test is not whether the litigation could have been handled differently. The reasonableness of counsel's conduct must be measured as of the time of the conduct, Hoxsie v. Kerby, supra, at 1246, and "those accused of crimes . . . are entitled only to a reasonably adequate defense, not the defense which, in hindsight,

7

they believe would have been the best." Boyd v. Ward, No. 98-6309, 1999 WL 370418, at *6 (10th Cir. June 8, 1999).

14. Nelson was not inexperienced in criminal defense. He had been practicing law for approximately one and a half years and had defended five or six criminal cases prior to taking on the Harfst matter, although he acknowledges that this was probably the first case in which the issue of role adjustment for minor or minimal participation had arisen. In addition, he assisted in 10 to 15 federal criminal cases, most of them involving drug charges. Prior to going to law school, he worked for eight years with criminal defense attorney Nancy Hollander on drug cases, presumably as a law clerk or paralegal. (Tr. EH, at 32-34). The Court takes judicial notice that Nancy Hollander is a nationally-known criminal defense lawyer. Nelson's statement is credible that he did consider the issue of role adjustment for minor/minimal participation, but basically didn't have enough information to pursue it with more specificity. He did not, as the Tenth Circuit points out, cite the particular section of the Sentencing Guidelines at the time he raised the issue, but attorneys habitually speak in such "shorthand" in court, and Nelson could reasonably assume that the judge would know what section he was referring to when he said "minor or minimal." This is no different than a trial attorney objecting to "hearsay" rather than objecting on the basis of "evidence Rule 802."

15. The Tenth Circuit also noted, in discussing whether Harfst was denied effective assistance, that trial counsel failed to object to the Presentence Report. United States v. Harfst, supra, 168 F.3d at 402. Harfst's attorney did object to the portion of the Presentence Report assigning a criminal history category. However, he made no objection to the portion of the report titled "Adjustment for Role in the Offense," containing the statement that Harfst was a "single participant in a single occurrence crime," and therefore no role adjustment was warranted. Defense

8

counsel acknowledged that he did not make an objection to this statement in the Presentence Report, but he explained that his client did not tell him, until after expiration of the time for objections, about the involvement of other persons in the crime. Again, counsel could conceivably have been more aggressive in questioning his client or in seeking more information about the enterprise, but he has testified that pressing his client for such information was not a fruitful enterprise. Nelson's reason for failing to object to the role adjustment language was plausible, and the Court cannot say that his performance was constitutionally defective, under the Strickland standard that "[j]udicial scrutiny of counsel's performance must be highly deferential."

**Defendant Suffered No Prejudice**.

16. To establish the second prong of Strickland, Harfst must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Boyd v. Ward, supra, at *5. The downward adjustment for being a minor or minimal participant is meant to be used sparingly, United States v. Ballard, 16 F.3d 1110, 1115 (10th Cir. 1994), and defendant has the burden of showing by a preponderance of the evidence that he is entitled to a downward adjustment under § 3B1.2. United States v. Harfst, supra, 168 F.3d at 401. Harfst has failed to make such a showing in this case, as it is apparent that the District Court would have found that he was not eligible for a downward adjustment as a minor or minimal participant, if it had squarely addressed the issue after hearing evidence such as that provided in the June 10 evidentiary hearing.

17. The Tenth Circuit has held that drug couriers are an indispensable component of drug dealing networks, and has refused to adopt a per se rule allowing downward adjustment as a minor or minimal participant based solely on defendant's status as a courier. United States v. Ballard, supra,

9

at 1114. Rather, the Court must look to Harfst's culpability relative to other participants in the crime. United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993). The culpability of a defendant drug courier depends on such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's role in the success of the venture, and the defendant's knowledge of the nature and scope of the criminal enterprise. United States v. Headley, 923 F.2d 1079 (10th Cir. 1991). A defendant who transports drugs, even if he has no involvement in manufacturing or packaging them, is as indispensable to a drug enterprise as those who purchase and distribute. United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990); United States v. Ballard, supra, at 1115.

18. Harfst presents himself as a nearly innocent, naive participant in this crime. He testified at the evidentiary hearing that he was merely a first-time courier, that he did not manufacture the drug nor package it, or own it, that he knew nothing of the overall enterprise in which he was involved, and indeed knew almost nothing about the other participants, and that he didn't even know the quantity of drugs that he was carrying. (Tr. EH, at 67-76).

19. Harfst did know, however, that the package he agreed to transport contained methamphetamine, and that he was to be paid $3,600.00, plus the cost of his train ticket, to carry it to Chicago on the train. (Tr. EH, at 68, 72, 78, 80). He was acquainted with Jeff King, the man who hired him to transport the drugs, and he knew that King had a reputation for being involved in drugs. (Tr. EH, at 71, 82). Although Harfst testified that he received no instructions from King as to the manner in which he should purchase the train ticket, or how he should conduct the travel, he seems to have followed the methods of experienced drug couriers, almost to the letter. Harfst bought a one-way ticket with cash, he left no callback number at the ticket counter, and he booked a sleeper car.

10

He obtained the ticket shortly before the train was to depart. He put the methamphetamine inside the toiletry bag in his luggage and carried the luggage into the sleeper compartment. (Tr. EH, at 79-80, 92). These actions are typical of drug couriers, and they tend to show that Harfst was not the unsophisticated, naive minor participant that he claims to be.

At the suppression hearing in this case, Special Agent Kevin Small, who arrested Harfst, testified that he has been employed with the Drug Enforcement Administration for 12 years and has been involved in over 200 seizures of controlled substances from Amtrak trains. In that time, he has observed that the majority of narcotics smugglers purchase a ticket for cash, usually one way, and book a sleeper car. They buy their ticket within three days of departure so as to minimize the time that they have to keep the drugs in their possession, and they typically do not leave a callback number. (Transcript of Suppression Hearing, March 23, 1995, at 35-40). Although Harfst testified that he was given no instructions on how to purchase the ticket and how to travel, Harfst seems to have stumbled upon the precise technique used by experienced drug couriers. He portrays himself as unsophisticated, perhaps a dupe in a larger scheme. However, Harfst was not uneducated; he was a high school graduate and although he did not earn a college degree, he did attend college for two or three years. (Tr. EH, at 65-66).

20. Harfst's account of his involvement in the methamphetamine enterprise is not credible. Harfst took many actions which do not make sense unless he was a larger, more sophisticated player in the drug scheme than he is willing to admit. It is nearly inconceivable that King, someone Harfst didn't know well, would entrust him with a large amount of drugs and would be so casual about it that he didn't even ask when Harfst planned to leave. (Tr. EH, at 91). Aside from the account of his ticket purchase and travel, Harfst also testified that he took on this courier job, his first, only

11

because he was unemployed and needed the money. (Tr. EH, at 67, 72). However, he had access to enough cash to rent a hotel room and purchase a train ticket, and at the time of his arrest, he was carrying marijuana for "recreational use," which implies he had money from some source to purchase recreational drugs. In addition, he could not describe in any detail at all the person who brought him the package in Los Angeles, and he says he did not know the identity of the Chicago contact, nor even what he was supposed to look like. The contact was apparently going to pick him out of all the travelers getting off the train in Chicago, and Harfst was not going to give any sign, wear any distinct clothing, or meet the contact at any predesignated spot. This scenario strains credulity. (Tr. EH, at 73, 75-76, 87-88).

21. In sum, Harfst was not an unsophisticated dupe. He acknowledged that he knew he was carrying methamphetamine, he was being paid to do so, he knew by acquaintance and reputation the man who hired him to transport the drug, he was carrying over a kilogram of the substance, and he purchased his train ticket in a manner suggesting his awareness of the techniques of drug transporting operations. If the District Court had addressed the issue, it would have found that Harfst's participation in the drug operation was not "minor" nor "minimal."

## Recommended Disposition

That the motion be denied and the action dismissed with prejudice.

_____
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR MOVANT:
Patrick J. Perrone, Esq.

ATTORNEY FOR USA:
Thomas L. English, Esq.